IFP SUBMITTED
REQ FOR SUMMONS

FILED
CLERK, U.S. DISTRICT COURT
2/24/2026
CENTRAL DISTRICT OF CALIFORNIA
BY EC DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**IFEOMA CHUKWURAH**,

Plaintiff,

v.

**MIDLAND MORTGAGE (servicer name as used in communications), a division of MIDFIRST BANK,**

**MIDFIRST BANK,**

**MIDLAND MORTGAGE INVESTORS TRUST,**

**and DOES 1–20**

Defendants.

Case No.: 2:26-cv-01990-MWC-(SKx)

**COMPLAINT**

(Declaratory, Injunctive, Statutory, and Supplemental Relief)

## I. INTRODUCTION

1. This action seeks judicial intervention to halt and remedy unlawful mortgage servicing and foreclosure conduct undertaken by Defendants while Plaintiff's requests for mortgage assistance were pending, repeatedly denied without explanation, and administratively escalated without resolution.

2. Defendants issued contradictory communications ("under review," unexplained denials, invitations to re-apply), recorded a Notice of Default, and failed to provide meaningful written determinations or responses, causing ongoing harm to Plaintiff's property interests and housing stability.

3. A Notice of Default recorded on or about December 26, 2025 remains active.

4. Plaintiff exhausted administrative avenues, submitted multiple written requests and applications, and invoked Defendants' escalation process.

5. Defendants' conduct necessitates declaratory and injunctive relief and supports federal and supplemental state claims.

6. Plaintiff brings this action in good faith seeking judicial clarification and injunctive relief to ensure lawful mortgage servicing and prevent irreparable harm.

## II. JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. §1331 arising under RESPA, the Fair Housing Act, and related federal statutes. Supplemental jurisdiction exists under 28 U.S.C. §1367.

8. Venue is proper in the Central District of California because the subject property is located in Los Angeles County, California, and a substantial part of the events giving rise to these claims occurred within this District.

## III. PARTIES

9. Plaintiff is an individual homeowner whose mortgage loan is serviced by Midland Mortgage.

10. Defendant **Midland Mortgage** is a mortgage servicer and a division of **MidFirst Bank**.

11. Defendant **MidFirst Bank** is a federally regulated financial institution that owns, controls, or directs the servicing practices at issue.

12. **Doe Defendants 1–10** include foreclosure trustees, counsel, vendors, and agents who participated in the conduct alleged.

## IV. STATEMENT OF FACTS

### A. The Loan, Servicing Relationship, and Regulatory Framework

13. Plaintiff owns residential property located in Los Angeles County, California, secured by an FHA-insured mortgage loan serviced by Defendant Midland Mortgage, a division of MidFirst Bank.

14. As an FHA servicer, Midland is subject to HUD loss-mitigation requirements and federal mortgage-servicing regulations.

15. Plaintiff's loan history reflects servicing irregularities including inconsistent accounting, unexplained capitalization of charges, escrow discrepancies, and failure to provide transparent payoff or reinstatement figures, despite Plaintiff's written requests for clarification made throughout 2024–2026.

**B. Medical Hardship and Requests for Accommodation**

16. Beginning no later than 2022, Plaintiff experienced serious medical hardship and disability-related limitations affecting her ability to resume or increase mortgage payments.

17. Plaintiff notified Defendants of these limitations and requested forbearance, flexibility, and written-only communication as reasonable accommodations on multiple occasions during 2024–2026.

18. Defendants were on notice of Plaintiff's disability and hardship but failed to engage in a meaningful interactive process, instead issuing mechanical, unexplained responses and shifting portal statuses.

**C. First Mortgage Assistance Application (December 2025)**

19. On or about December 22, 2025, Plaintiff submitted a complete mortgage assistance application seeking forbearance and loss-mitigation relief.

20. On December 29, 2025, Defendants acknowledged receipt of Plaintiff's application and represented in writing that the application was "under review" and that foreclosure would not advance during the review period.

21. Despite this acknowledgment, Defendants failed to provide any written explanation of evaluation criteria, missing documentation, or next steps while the application remained pending.

**D. Foreclosure Initiation During Pending Review**

22. On or about December 26, 2025, Defendants recorded a Notice of Default against Plaintiff's property, initiating foreclosure proceedings while Plaintiff's December 2025 application was pending and unresolved.

**E. Appeals, Disputes, and Continued Requests**

23. Between late December 2025 and January 2026, Plaintiff submitted multiple written appeals and disputes challenging Defendants' handling of the mortgage assistance process, requesting clarification of her mortgage balance, and reiterating requests for forbearance.

24. Defendants failed to issue any written appeal determinations addressing these submissions.

**F. Second Application Cycle and Unexplained Denials (January 2026)**

25. On January 21, 2026, Defendants treated Plaintiff's file as a new or reopened application cycle and issued a mortgage assistance denial without providing any explanation for the decision or identifying which loss-mitigation option was evaluated.

26. The denial invited Plaintiff to re-apply without guidance and without curing information.

27. No written decision explaining the basis for denial was uploaded to Defendants' "Statements & Documents" portal.

28. On January 26, 2026, Defendants again posted a denial in the portal, despite Plaintiff not submitting a new application after January 21, 2026.

29. Plaintiff was required to log into the portal to discover this adverse status change and received no contemporaneous written notice explaining the change.

30. As a direct and proximate result of Defendants' conduct, Plaintiff suffered injury to property and business interests, including a recorded Notice of Default, accrual of fees and charges, clouded title, impaired credit, loss of housing stability, emotional distress, and ongoing risk of foreclosure.

31. On January 27, 2026, Defendants sent automated communications stating that Plaintiff's application was "under review" and that foreclosure would not proceed during review, contradicting the contemporaneous portal denials.

**G. Contradictory Communications and Escalation**

32. On or about January 21–22, 2026, Defendants mailed Plaintiff a Mortgage Assistance Center ("MAC") Escalation Inquiry letter acknowledging Plaintiff's dispute regarding the handling of her loan and promising a response by February 7, 2026.

33. Defendants did not reconcile the escalation with the unexplained denials, did not withdraw the Notice of Default, and did not provide any reasoned written determination.

**H. Post-Deadline Noncompliance**

34. On or about December 29, 2025, Plaintiff sent a written demand letter to Defendants via electronic mail, and mailed the same correspondence on December 30, 2025, requesting clarification and resolution of ongoing mortgage servicing and loss-mitigation issues.

35. In response, Defendants initiated an escalation review and subsequently established a response deadline of February 20, 2026.

36. The escalation correspondence did not clearly identify which issue or issues were under review, including Plaintiff's appeals, mortgage assistance applications, or demand letter, and Defendants failed to provide a substantive response by their own stated deadline.

37. Defendants' silence and failure to act after the deadline materially impaired Plaintiff's ability to preserve housing, pursue alternatives, and obtain meaningful review as required under federal servicing regulations.

38. This failure reflects a continuing pattern of procedural noncompliance supporting injunctive and declaratory relief.

**I. Failure to Respond After Plaintiff's Written Deadline**

39. Plaintiff made multiple telephone inquiries regarding the status of appeals and loss-mitigation reviews.

40. During these calls, representatives provided inconsistent information regarding whether appeal decisions had been issued, whether correspondence had been sent, and the status of review.

**J. Back-Dated Appeal Handling and Failure to Review Submitted Appeals**

41. Plaintiff submitted an appeal concerning mortgage assistance and loss-mitigation review on or about May 3, 2025, via electronic mail to Defendants' designated appeal channels.

42. Despite the absence of evidence that the appeal was reviewed, Defendants later issued communications referencing appeal determinations, creating confusion regarding whether Plaintiff's appeal had actually been evaluated.

43. In subsequent communications and telephone inquiries, Plaintiff received inconsistent explanations regarding the timing and status of appeal decisions, including statements suggesting that decisions had been issued earlier than when they were actually provided to Plaintiff.

44. The delayed and inconsistent handling of Plaintiff's appeal materially impaired Plaintiff's ability to respond, cure alleged deficiencies, and preserve housing rights prior to foreclosure deadlines.

## V. CLAIMS FOR RELIEF

### CLAIM I – RESPA (12 U.S.C. § 2605) – Failure to Provide Meaningful Response

45. **Elements:** (a) Defendant is a servicer; (b) Plaintiff sent written requests/applications; (c) failure to respond adequately; (d) damages.

46. **Supporting Law:** 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35–1024.36.

47. **Facts Matching Elements:** Defendants acknowledged receipt yet issued unexplained denials, portal-only updates, and failed to provide written explanations or responses, causing foreclosure risk and monetary harm.

### CLAIM II – RESPA (Dual Tracking)

48. **Elements:** (a) Loss-mitigation pending; (b) foreclosure activity advanced; (c) harm.

49. **Supporting Law:** 12 C.F.R. § 1024.41.

50. **Facts:** Defendants maintained foreclosure posture and recorded an NOD while applications and escalation were pending.

### CLAIM III – Fair Housing Act (42 U.S.C. § 3604) – Disability Discrimination / Failure to Accommodate

51. **Elements:** (a) Plaintiff is disabled; (b) Defendants knew or should have known; (c) denial of reasonable accommodation; (d) injury.

52. **Supporting Law:** 42 U.S.C. § 3604(f); implementing regulations.

53. **Facts:** Defendants failed to engage in an interactive process and denied forbearance-related accommodations through mechanical, unexplained decisions.

**CLAIM IV – Procedural Accommodation / Accessibility (FHA and Related Law)**

54. **Elements:** (a) Disability; (b) covered program/service; (c) failure to provide accessible process; (d) harm.

55. **Supporting Law:** 42 U.S.C. § 3604(f) (Fair Housing Act); related federal accessibility and accommodation principles.

56. **Facts:** Portal-only communications, lack of written notices, and inaccessible appeal pathways denied meaningful access to servicing.

**CLAIM V – California Unfair Competition Law (Bus. & Prof. Code § 17200)**

57. **Elements:** (a) Unlawful, unfair, or deceptive acts; (b) restitution/injunctive relief.

58. **Supporting Law:** Cal. Bus. & Prof. Code § 17200.

59. **Facts:** Re-apply loops, unexplained denials, contradictory notices, and administrative chaos constitute unfair practices.

**CLAIM VI – Breach of the Covenant of Good Faith and Fair Dealing**

60. **Elements:** (a) Contract; (b) bad-faith conduct; (c) damages.

61. **Supporting Law:** California common law.

62. **Facts:** Defendants frustrated Plaintiff's contractual benefits by advancing foreclosure while purporting to review assistance.

**CLAIM VII – Wrongful Foreclosure (Attempted/In Progress)**

63. **Elements:** (a) Procedural defects; (b) foreclosure steps; (c) prejudice.

64. **Supporting Law:** California Homeowner Bill of Rights; common law.

65. **Facts:** NOD recorded amid pending review and defective notice practices.

**CLAIM VIII – Negligence and Improper Disclosure of Personal Information**

66. **Elements:** (a) Duty to safeguard information; (b) breach; (c) causation; (d) damages.

67. **Supporting Law:** California common law privacy and negligence principles.

68. **Facts:** Defendants transmitted another borrower's nonpublic personal information to Plaintiff and failed to remediate or explain.

**CLAIM IX – Declaratory Relief (Based on Underlying Violations)**

69. **Elements:**

    a. An actual controversy exists between the parties;

    b. The controversy is definite and concrete, touching legal relations of parties with adverse interests;

    c. The controversy is real and immediate, not hypothetical;

    d. Declaratory relief will clarify and settle the legal relations at issue.

70. **Supporting Law:** 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act).

71. Declaratory relief is sought based upon the foregoing statutory and common law violations alleged herein.

72. **Facts:** An actual controversy exists regarding the legality of Defendants' mortgage servicing practices, the validity of foreclosure-related actions taken during pending loss-mitigation review, and Plaintiff's rights to lawful servicing and accommodation.

**CLAIM X – Injunctive Relief (Based on Underlying Violations)**

73. **Elements:**

    a. Likelihood of success on the merits;

    b. Likelihood of irreparable harm absent relief;

    c. Balance of equities favors Plaintiff;

    d. Injunctive relief serves the public interest.

74. **Supporting Law:** Fed. R. Civ. P. 65; Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008).

75. Injunctive relief is sought based upon the foregoing statutory and common law violations alleged herein.

76. **Facts:** Plaintiff faces ongoing and imminent harm from active foreclosure proceedings initiated while loss-mitigation requests and disputes remained unresolved.

77. Monetary damages alone cannot adequately remedy the threatened loss of housing and related harms.

## VI. ADMINISTRATIVE EXHAUSTION

78. Prior to filing this action, Plaintiff pursued multiple administrative remedies and regulatory complaint processes concerning Defendants' mortgage servicing practices, loss-mitigation handling, and related conduct.

79. Plaintiff submitted complaints and/or requests for review to various state and federal oversight agencies, including but not limited to:

    a. California Department of Financial Protection and Innovation (DFPI) — complaint submitted on or about **August 5, 2025**;

    b. U.S. Department of Housing and Urban Development (HUD) — housing inquiry acknowledged on or about **May 7, 2025**, with additional intake acknowledged on or about **June 18, 2025**;

    c. Consumer Financial Protection Bureau (CFPB) — complaint submitted on or about **August 6, 2025**;

    d. Better Business Bureau (BBB) — complaint submitted on or about **August 5, 2025**, regarding Midland Mortgage servicing practices;

    e. California Department of Consumer Affairs (DCA) — complaint submitted on or about **August 5, 2025**;

    f. California Attorney General Consumer Complaint Division — complaint confirmed received on or about **August 6, 2025**;

g. Office of the Comptroller of the Currency (OCC) — consumer complaint submitted on or about **August 25, 2025**;

h. Other relevant oversight entities and regulatory channels.

80. Despite these efforts, Defendants failed to adequately resolve the servicing issues, provide meaningful relief, or halt ongoing foreclosure-related harm.

81. Plaintiff therefore brings this action after exhausting reasonable administrative avenues, and judicial intervention is necessary to preserve Plaintiff's rights and prevent irreparable harm.

## VII. URGENCY AND IRREPARABLE HARM

82. Plaintiff faces ongoing and immediate risk of irreparable harm arising from active foreclosure proceedings, including the recorded Notice of Default and the continuing accrual of fees, penalties, and damage to title and credit.

83. Monetary damages alone cannot adequately remedy the loss of housing, disruption to stability, or impairment of property rights that would result if foreclosure activity proceeds while disputes and loss-mitigation issues remain unresolved.

84. Accordingly, judicial intervention is necessary to preserve the status quo pending adjudication of the merits.

85. Plaintiff does not seek to avoid lawful repayment obligations, but rather seeks temporary stabilization of the status quo so that loss-mitigation and legal claims may be fairly adjudicated without the irreparable harm of foreclosure occurring first.

## VIII. PRAYER FOR RELIEF

86. Plaintiff seeks declaratory and injunctive relief, statutory damages where available, restitution, costs, and such other relief as the Court deems just.

## IX. JURY DEMAND

87. Plaintiff demands a trial by jury on all triable issues.

Dated: 2/24/2026

Respectfully submitted,

**/s/ Ifeoma Chukwurah**

Ifeoma Chukwurah
Plaintiff, Pro Se

1968 S. Coast Hwy, #4064

Laguna Beach, CA 92651