**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**IFEOMA CHUKWURAH R.N,**

Plaintiff,

v.

**MIDLAND MORTGAGE** (servicer name as used in communications), a division of MIDFIRST BANK;

**MIDFIRST BANK;**

**MIDLAND MORTGAGE INVESTORS TRUST;**

**QUALITY LOAN SERVICE CORPORATION;**

**MCCARTHY & HOLTHUS, LLP;**

**and DOES 1–20,**

Defendants.

**Case No.:** 2:26-cv-01990-MWC-SK

**FIRST AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, STATUTORY, AND SUPPLEMENTAL RELIEF PURSUANT TO FED. R. CIV. P. 15(a)(2):**

1. Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. § 2605)
2. Federal Fair Housing Act (FHA) (42 U.S.C. § 3604(f))
3. Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692e, § 1692f(6))
4. California Homeowner Bill of Rights (HBOR) (Cal. Civ. Code § 2923.6, § 2924.12)

5. California Fair Employment and Housing Act (FEHA) (Cal. Gov. Code § 12955)
6. Financial Abuse of a Dependent/Elder Adult (Cal. Welf. & Inst. Code § 15610.30)
7. California Rosenthal Act (Cal. Civ. Code § 1788.17)
8. California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)
9. Tortious Breach of Implied Covenant of Good Faith and Fair Dealing
10. Common Law Negligence

**DEMAND FOR JURY TRIAL: YES**

## I. INTRODUCTION

1. This action seeks urgent judicial intervention to halt and remedy a compounding sequence of unlawful mortgage servicing, statutory foreclosure violations, and malicious post-filing digital retaliation undertaken by Defendants while Plaintiff's applications for mortgage assistance were active, pending, and administratively escalated.

2. Defendants issued systematically contradictory communications, recorded an illegal Notice of Default during a pending review window, maliciously revoked Plaintiff's secure online account access to obscure loan documents, and selectively advanced a retaliatory, non-judicial foreclosure auction date for August 6, 2026, while the underlying dispute remained under active state civil rights appellate review.

3. Plaintiff brings this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) in conjunction with her Motion for Leave to File Amended Pleading. This action seeks temporary, preliminary, and permanent injunctive stabilization to preserve the status quo and prevent the un-mootable, extrajudicial liquidation of Plaintiff's primary residence.

    3.1. Pro Se Preamble and Leniency Mandate: Plaintiff brings this action in pro per and invokes her fundamental protections under ***Haines v. Kerner*, 404 U.S. 519, 520 (1972)**. Under controlling Supreme Court doctrine, allegations within an unrepresented

litigant's complaint, "however inartfully pleaded," must be held to significantly "less stringent standards than formal pleadings drafted by lawyers." Dismissal or striking of claims is strictly prohibited unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Plaintiff's claims are heavily grounded in direct state civil rights appeal tracking and written admissions, satisfying all baseline federal plausibility metrics.

## II. JURISDICTION AND VENUE

4. This Court possesses federal-question jurisdiction under 28 U.S.C. § 1331 because the underlying claims arise directly from the Fair Housing Act (42 U.S.C. §§ 3601, et seq.) and the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. §§ 2601, et seq.).

5. The Court possesses supplemental subject-matter jurisdiction over all ancillary state-law statutory and common-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same operational case or controversy and share an absolute identity of transactional facts.

6. Venue is perfectly proper in the Central District of California under 28 U.S.C. § 1391(b) because the subject real property asset is located inside Los Angeles County, California, and the structural predatory servicing and foreclosure acts occurred within this specific judicial district.

## III. PARTIES

7. Plaintiff Ifeoma Chukwurah is an individual homeowner, a registered nurse, a single caregiver, and a severely ill oncology patient residing at the subject property asset.

8. **Defendant Midland Mortgage** is a commercial mortgage servicer and an operational operating division of Defendant MidFirst Bank, responsible for managing the day-to-day transactional balance metrics, loss-mitigation applications, and direct borrower communications at issue.

9. **Defendant MidFirst Bank** is a federally regulated financial institution that directly owns, controls, or dictates the corporate loss-mitigation policies, underwriting software configurations, and executive foreclosure directives executed by its division, Midland Mortgage.

10. **Defendant Midland Mortgage Investors Trust** is a banking pool entity asserting a secured, securitized investment or beneficiary interest in Plaintiff's underlying Deed of Trust.

11. **Defendant Quality Loan Service Corporation ("Quality")** is a foreclosure trustee entity acting as a commercial agent of Midland Mortgage. Defendant Quality is sued herein not for routine performance of ministerial trustee duties, but for its independent, non-exempt execution of statutory dual-tracking violations under **Cal. Civ. Code § 2923.6**, and for its participation as an associate-in-fact within the deceptive business enterprise alleged herein.

12. Defendant McCarthy & Holthus, LLP ("M&H") is a specialized debt-collection law firm and foreclosure trustee agent directing the extrajudicial liquidation tracking logs at issue. Defendant M&H is sued herein as an independent debt collector within the meaning of the California Rosenthal Fair Debt Collection Practices Act (RFDCPA) (**Cal. Civ. Code § 1788.2(c)**). Under the controlling rule of ***Obduskey v. McCarthy & Holthus LLP*** **(2019)**, Defendant M&H is also sued under the federal Fair Debt Collection Practices Act (FDCPA) **solely for the limited purpose of 15 U.S.C. § 1692f(6)**, as M&H has threatened and scheduled a non-judicial auction sale of Plaintiff's primary residence despite possessing no lawful, present right to possession due to active, unresolved statutory dual-tracking and pending FHA loss-mitigation reviews.

## IV. STATEMENT OF FACTS

### A. The Loan, Servicing Irregularities, and Medical Hardship

13. Plaintiff is the legal homeowner of the residential real property located within Los Angeles County, California, identified strictly by Assessor's Parcel Number (APN) 4052-024-086, secured by an FHA-insured mortgage

loan. **Except for the payment defaults directly induced and perpetuated by Defendants' bad-faith servicing loops, Plaintiff has performed all conditions, duties, and obligations required under the underlying mortgage contract and Deed of Trust.**

14. At all times relevant, Plaintiff's mother, who resides in the subject property and requires 24/7 bedside care, is 70 years old and is an 'elder' and 'dependent adult' under Cal. Welf. & Inst. Code § 15610.23. Furthermore, Plaintiff, as a chronically ill and disabled, post carcinoma patient suffering from acute physical and cognitive limitations, qualifies as a 'dependent adult' under the statute.

15. Plaintiff notified Defendants of these specific medical constraints and formally requested written-only communication via email as a mandatory reasonable accommodation under the Fair Housing Act, due to the severe processing impairments caused by physical exhaustion and stress. Defendants ignored the interactive process, continuing to force verbal phone transactions.

**B. Complete Loan Modification Submission and Dual-Tracking Infractions**

16. On or about December 22, 2025, Plaintiff submitted a complete mortgage assistance loss-mitigation package to Defendants. On December 29, 2025, Defendants acknowledged receipt of the complete application in writing, explicitly stating the loan was "under review" and promising that foreclosure tracking would remain frozen during the review.

17. In direct violation of this written promise and state substantive law, Defendants recorded a formal Notice of Default (NOD) against Plaintiff's title on or about December 26, 2025, advancing a non-judicial foreclosure track while the complete loan modification package sat active and pending in their system.

18. Throughout January 2026, Defendants engaged in systematic accounting loops, posting machine-generated "denials" in the online portal on January 21 and January 26 without issuing any required statutory written

explanations, while concurrently mailing out contradictory letters stating the loan remained "under active review."

**C. The Unanswered Escalation Framework and RESPA Notice of Error**

**19.** On January 13, 2026, Defendants formally acknowledged Plaintiff's complaints regarding administrative chaos by assigning **MAC Escalation Inquiry Case Number 2319539**, with an initial resolution deadline of February 7, 2026. On February 5, 2026, Defendants issued a written notice stating they required an additional 15 days, extending their absolute resolution cutoff to **February 20, 2026**.

20. Defendants completely abandoned their own tracking mechanism and "ghosted" the escalation cutoff without ever issuing a substantive written determination or reconciling their conflicting records.

21. Consequently, on March 12, 2026, Plaintiff formally transmitted a comprehensive **RESPA Notice of Error** pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35. This notice detailed: (a) the systemic failure to respond to five consecutive borrower appeals; (b) the expiration of the February 20 escalation deadline; and (c) the continuous insistence on using delayed postal channels to artificially shorten Plaintiff's response windows. Defendants entirely ignored this statutory notice.

21.1. **Negligent Account-Level Data Breaches and Privacy Violations:** Defendants have demonstrated a chronic, systemic breakdown in account-level data integrity by repeatedly commingling and exposing third-party consumer records. Specifically, prior to **November 3, 2025**, Defendants negligently mailed to Plaintiff the highly sensitive, non-public personal financial and medical hardship records of borrower **Angel Perdomo** (Loan No. 58749007).

21.2. When Plaintiff contested this breach, Defendant Midland Mortgage issued a formal written apology on **November 3, 2025**, admitting to the error. Defying their own promises of "staff training," Defendants committed a subsequent, compounding data breach on or about **April 9, 2026**, by providing Plaintiff with the private account statements,

financial histories, and customer call logs of borrower **Barbara Butler** (Loan No. 57257927).

21.3. These serious operational failures and ongoing data leaks establish a profound negligence in Defendants' record-keeping software and confirm that Defendants' automated calculations and evaluations regarding Plaintiff's active loss-mitigation applications are fundamentally inaccurate, structurally unreliable, and legally deficient.

**D. June–July 2026: Open Procedural Default and Malicious Digital Retaliation**

22. Following the initiation of this action, Defendants MidFirst Bank and Midland Mortgage were required to file a responsive pleading by July 1, 2026. Defendants missed this deadline and filed an untimely collective Answer on July 2, 2026, without seeking prior leave of Court.

23. **The May 6, 2026 Portal Lockout:** On May 6, 2026, immediately following Plaintiff's protected legal activity of filing mortgage servicing exhibits into the public federal court record, Defendant Midland Mortgage completely revoked Plaintiff's secure online account portal access. Upon attempting to log in, Plaintiff received a message stating: *"Your account is unable to access the website. Please call us at 800-654-4566 for assistance."*

24. This targeted digital exclusion deliberately stripped away Plaintiff's primary, ADA-compliant written method of document review, statement oversight, and communication. Defendants intentionally removed this written channel to force a disabled, high-fatigue oncology patient into phone channels that fail to accommodate her medical restrictions.

25. **The Deceptive July 9, 2026 Auction Scheduling:** On July 9, 2026, internal tracking metrics managed by Defendants' foreclosure trustee, McCarthy & Holthus, LLP, updated to reflect that an active Trustee's Auction Sale has been scheduled against Plaintiff's primary residence for **August 6, 2026, at 09:00 AM** at the Doubletree Hotel Los Angeles-Norwalk (Vineyard Ballroom).

26. Following Plaintiff's emergency filings into the public record, Defendants scheduled an August 6, 2026 trustee's sale before this Court has had an opportunity to consider Plaintiff's request for emergency injunctive relief. If the extrajudicial auction is permitted to proceed before a ruling on the merits, Plaintiff faces immediate and irreversible housing displacement, effectively rendering the requested equitable remedies moot.

**E. Established Pattern of Systematic FHA Loss-Mitigation and Foreclosure Non-Compliance**

27. **The Federal Audit Mandates:** The unlawful, deceptive dual-tracking and processing obstructions executed against Plaintiff are part of a long-standing, systemic, and institutional pattern of non-compliance officially documented by the federal government.

28. **The 2011 OIG Audit Findings:** Pursuant to HUD Office of Inspector General (OIG) Audit Report No. 2011-FW-1008, federal auditors previously caught Defendant Midland Mortgage Company misapplying FHA Home Affordable Modification Program (HAMP) parameters. Auditors explicitly determined that Midland routinely failed to verify borrower eligibility and inadvertently recorded partial claim documents with incorrect, back-dated maturity dates. The OIG factually established that if left uncorrected, Midland's illegal maturity date manipulation obligates borrowers to pay off the partial claim before the modified mortgage is due, causing artificial defaults. Defendants applied this exact, federally audited methodology against Plaintiff by advancing an August 6, 2026 auction date based on un-reconciled, shifting maturity and modification review milestones.

29. **The 2025 OIG Systemic Fraud Exposure:** More recently, pursuant to HUD OIG Audit Report Number 2025-KC-1001, issued January 28, 2025, federal oversight authorities determined that **MidFirst Bank misapplied FHA's foreclosure requirements for more than 14 percent of its foreclosures**.

30. **Identical Modus Operandi:** The 2025 OIG Report factually established that out of a universe of 7,363 FHA-insured loans, MidFirst Bank failed to follow HUD rules for an estimated **1,038 loans**, routinely initiating the

foreclosure process *before* reviewing borrowers' loss-mitigation requests, moving forward with first legal filings while actively awaiting documents, charging unnecessary foreclosure-related fees, and forcing borrowers out of streamlined retention pathways.

30.1. Defendants utilized this exact, federally audited modus operandi against Plaintiff by recording the Notice of Default on **December 26, 2025**, while Plaintiff's complete FHA loss-mitigation package was actively pending review.

31. **Willful Intent to Defraud:** This independent federal data confirms that Defendants' processing failures, portal lockouts, and dual-tracking mechanisms are not isolated clerical errors, but are part of an ongoing, continuous, and systemic corporate scheme designed to bypass statutory borrower protections to force rapid, extrajudicial asset liquidations.

31.1. **Trustee Quality's Pattern of Administrative Deception:** This corporate pattern of utilizing administrative and structural blackouts is further demonstrated by the regulatory history of Defendant Quality Loan Service Corporation.

31.2. In 2014, the Washington State Attorney General successfully prosecuted Quality in ***State of Washington v. Quality Loan Service Corp. of Washington*** (Consent Decree, March 2014), obtaining a multi-hundred-thousand-dollar settlement and a foreclosure moratorium after proving that Quality engaged in unfair and deceptive business practices by concealing office relocations, blocking physical and written communications, and failing to act as a neutral party.

31.3. This documented habit of blocking communication channels to accelerate foreclosures directly mirrors Quality's active, coordinate participation in the May 6 portal lockout and the deceptive August 6 auction scheduling designed to bypass Plaintiff's pending appeals in the present action.

## F. MULTI-AGENCY REGULATORY COMPLAINTS & ESCALATION EXHAUSTION

32. **Exhaustion of External Regulatory Remedies:** In an effort to obtain administrative oversight and compel Defendants to reconcile their contradictory accounting ledgers, Plaintiff formally lodged detailed administrative complaints with multiple federal and state oversight authorities, including:

32.1. the U.S. Department of Housing and Urban Development (HUD Case No. 830674);

32.2. the Consumer Financial Protection Bureau (CFPB Case Nos. 250806-22940282 and 260326-30544659);

32.3. the Office of the Comptroller of the Currency (OCC Case No. CS0391668);

32.4. the California Department of Financial Protection and Innovation (DFPI Complaint No. CN0030209);

32.5. the Office of the California Attorney General; and

32.6. the Better Business Bureau (BBB Case No. 23706637).

33. **Failure to Account for HUD Grant Funds:** Despite Plaintiff's loan being subject to a $129,205.94 FHA/HUD Partial Claim executed in 2019, Defendants have repeatedly refused to provide an itemized escrow accounting or explain how those HUD subordinate funds were calculated in relation to the current total payoff metrics, in violation of mandatory RESPA and FHA servicing standards.

## G. THE JULY 20, 2026 WRITTEN ADMISSIONS & TRIANGULATION OF CONTRADICTIONS

34. **Servicer's Written Admission of Foreclosure Sale:** On July 20, 2026, Defendant Midland Mortgage, a division of MidFirst Bank, transmitted official written correspondence to Plaintiff explicitly admitting that MidFirst Bank has scheduled an extrajudicial foreclosure auction sale of Plaintiff's primary residence for August 6, 2026.

35. **The Mutually Exclusive, Contradictory Servicing Timeline:** Defendants' own written declarations and court filings contain three irreconcilable, mutually exclusive timelines that demonstrate bad-faith dual-tracking and severe internal accounting failure:

35.1. **Court Filing (Dkt. 82 ¶¶ 23, 39):** In their Answer filed July 2, 2026, defense counsel represented under FRCP Rule 11 that loss mitigation reviews concluded between October 2025 and January 2026.

35.2. **Defense Counsel Written Representation (July 9, 2026):** On July 9, 2026, lead defense counsel Matthew B. Learned represented in writing that Plaintiff was approved for an active Trial Plan in March 2026.

35.3. **Servicer Written Representation (July 20, 2026):** In their July 20, 2026 letter, Defendant Midland Mortgage represented that loan assistance was denied on May 11, 2026—exactly five days after Defendants executed a complete digital portal lockout against Plaintiff on May 6, 2026.

36. **Willful Bypassing of Open Escalation Case #2319539:** Defendants' July 20, 2026 correspondence completely ignored their own written commitment under MAC Escalation Inquiry Case Number 2319539 (which established a formal resolution deadline of February 20, 2026). Defendants bypassed their open, unanswered escalation framework to prematurely advance an extrajudicial auction date for August 6, 2026, in direct violation of California Civil Code § 2923.6.

## H. COMPOUNDING DATA BREACHES & PRIVACY VIOLATIONS

37. **Systemic Data Commingling and Privacy Breaches:** Defendants' automated loan servicing software lacks structural data integrity and routinely commingles separate borrower files. On two separate occasions, Defendants improperly transmitted the highly sensitive, non-public personal financial and medical hardship records of completely unrelated third-party borrowers directly into Plaintiff's caregiving domain:

37.1. Prior to November 3, 2025, Defendants negligently mailed Plaintiff the private financial and hardship files of borrower Angel Perdomo (Loan No. 58749007).

37.2. On April 9, 2026, Defendants transmitted to Plaintiff the private account statements, financial histories, and call logs of borrower Barbara Butler (Loan No. 57257927).

38. **Legal Impact on Loss Mitigation Accuracy:** These chronic data leaks demonstrate that Defendants' record-keeping architecture is fundamentally broken, rendering their automated calculations, escrow fee balances, and loan assistance denials regarding Plaintiff's account legally deficient, unreliable, and arbitrary.

## I. LIVE STATE CIVIL RIGHTS APPEALS & INDEPENDENT RETALIATION ENFORCEMENT

39. **Active CRD Administrative Appeal Exhaustion:** Following a conditional "No Cause Determination" issued on July 13, 2026, by California Civil Rights Department (CRD) Supervisor Ryan Vogel regarding Case No. 202602-33511910 / HUD No. 09-26-8275-8, Plaintiff fully exhausted her administrative avenues on July 13, 2026, at 4:06 PM, by transmitting a formal Appeal Request Form directly to the CRD Appeals Unit. On July 23, 2026, CRD Supervisor II Esmeralda Yager officially confirmed in writing that Plaintiff's appeal is accepted, open, live, and actively undergoing formal review by the department's Appeals Unit to determine if the initial closure was unsupported by the record.

40. **Active Retaliation Docket and Approved Written Accommodation:** On June 25, 2026, Plaintiff formally lodged an independent administrative enforcement action with the CRD (Case No. 202606-35600610) specifically addressing the May 6, 2026 digital portal lockout as a targeted act of post-filing retaliation. On June 24, 2026, CRD ADA Coordinator Mimi de Ville formally approved Plaintiff’s medical accommodation request commanding that this fresh retaliation track be conducted entirely in writing via email. As confirmed by the department on July 23, 2026, this independent retaliation intake remains a live, open file with written

questions explicitly scheduled for transmission by October 9, 2026, and an intake response deadline finalized for October 19, 2026.

41. **Active State Legislative Intervention and Inquiries:** In direct response to the structural breakdowns, missed statutory timelines, and systemic data commingling perpetuated by Defendants, the Office of California Assemblywoman Cottie Petrie-Norris officially intervened on July 21, 2026, launching active legislative status inquiries with the leadership of the Civil Rights Department (CRD) and parallel state regulatory agencies. Allowing an extrajudicial foreclosure liquidation to advance on August 6, 2026, while state legislative investigations remain active and state civil rights appeals are undecided would cause irreversible housing displacement and permanently moot active state compliance reviews before a final administrative determination can issue.

## J. INTENTIONAL CHANNEL FRAGMENTATION & FAILURE OF ACCOMMODATION

42. **Persistent Circumvention of Designated Court Email:** Despite Plaintiff explicitly establishing a dedicated litigation email address **(plaintiffdocs2025@gmail.com)** on the public CM/ECF docket and in written correspondence, and despite repeated requests for a centralized written communication protocol as an ADA/FEHA reasonable accommodation, Defendants persistently transmit unannounced servicing and foreclosure notices to Plaintiff's private, non-litigation personal email address.

43. **Administrative Burden and Bad-Faith Confusion:** This deliberate fragmentation of communication channels forces a disabled oncology patient navigating cognitive fatigue to perform burdensome manual redactions of private personal identifiers before filing documents into the public record, directly violating the interactive process and demonstrating a bad-faith tactic designed to create administrative confusion.

## V. EXCLUSION FROM LITIGATION PRIVILEGE, INDEPENDENT DEBT COLLECTOR LIABILITY, AND JOINT AND SEVERAL LIABILITY AGENCY

44. **No Litigation Privilege Immunity:** Plaintiff explicitly logs for the record that the claims asserted against Defendant McCarthy & Holthus, LLP, and Defendant Quality Loan Service Corporation are completely exempt from the protections of the California litigation privilege (Cal. Civ. Code § 47(b)) and any corresponding federal common-law attorney-client shields.

44.1. The litigation privilege does not immunize a law firm or foreclosure trustee from independent statutory liability under the California Homeowner Bill of Rights (HBOR), the California Unfair Competition Law (UCL), or consumer debt-collection acts where the entity performs the underlying illegal acts themselves.

45. **Independent Tortious Conduct:** Defendants M&H and Quality are actively executing an extrajudicial, non-judicial foreclosure mechanism across commercial wires. By setting, managing, and advancing an active Trustee's Auction Sale date for August 6, 2026, while Plaintiff's complete loss-mitigation application and formal administrative civil rights appeals remained open and pending, M&H and Quality stepped outside the boundary of mere legal representation and engaged in independent, actionable violations of Cal. Civ. Code § 2923.6.

46. **Rosenthal Act and FDCPA § 1692f(6) Debt Collector Status:** Defendant M&H acted as an independent "debt collector" executing commercial collection transactions. Under the binding rule of *Obduskey v. McCarthy & Holthus LLP, 586 U.S. ___, 139 S. Ct. 1029 (2019)*, the Supreme Court unanimously held that while a business engaged in no more than non-judicial foreclosure proceedings is exempt from the general provisions of the FDCPA, it remains strictly defined as a "debt collector" under the Act for the specific, limited purpose of **15 U.S.C. § 1692f(6)**.

46.1. Concurrently, the *Obduskey* Court explicitly held that enforcing a security interest does not grant an actor blanket immunity from the FDCPA. Because M&H and Quality are actively tracking and advancing a non-judicial auction date for August 6, 2026, without a present right to possession—due to active violations of California's Homeowner Bill of Rights dual-tracking ban (Cal. Civ. Code § 2923.6)—both entities are directly liable under § 1692f(6)(A) for taking non-judicial action without a present right to possession.

## VI. CLAIMS FOR RELIEF

### CLAIM I: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)

**(12 U.S.C. § 2605(e) et seq.; 12 C.F.R. § 1024.35 & § 1024.41) — Against Defendant MIDFIRST BANK / MIDLAND MORTGAGE**

47. Plaintiff incorporates all preceding factual paragraphs as though fully set forth herein.

48. Pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35, Defendant MidFirst Bank, operating through its division Midland Mortgage, has a strict statutory duty to provide a meaningful, written response to consumer Qualified Written Requests (QWRs) and Notices of Error (NOEs) within the mandated statutory windows.

49. On March 12, 2026, Plaintiff transmitted a comprehensive RESPA Notice of Error detailing clear servicer accounting irregularities, corporate assessment loops, and the total abandonment of MAC Escalation Inquiry Case Number 2319539. Defendant completely ignored this statutory notice, failed to issue any written explanation, and blew past its extended escalation cutoff deadline of February 20, 2026, without reconciling Plaintiff's records.

50. Furthermore, pursuant to 12 C.F.R. § 1024.41, Defendant is barred from advancing foreclosure tracking or logging first legal notices while a complete loss-mitigation application sits active. Defendant breached this mandate by maintaining an aggressive foreclosure posture and advancing an extrajudicial sale track while Plaintiff's complete loss-mitigation applications and escalation cases were pending review.

51. As a direct and proximate result of Defendant's statutory violations, Plaintiff has suffered concrete, actual damages, including out-of-pocket copying and postage fees, along with severe emotional distress and worsening clinical oncology fatigue induced by navigating a forced administrative vacuum.

**CLAIM II: VIOLATION OF THE FEDERAL FAIR HOUSING ACT (FHA)**

**(42 U.S.C. § 3604(f) et seq.) — For Failure to Provide Reasonable Accommodations — Against Defendant MIDFIRST BANK**

52. Plaintiff incorporates all preceding factual paragraphs as though fully set forth herein.

53. The federal Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B), makes it unlawful to refuse to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a disabled individual an equal opportunity to use and enjoy a dwelling.

54. Plaintiff is a legally disabled citizen under the FHA, and Defendant possessed explicit, actual notice of her clinical oncology restrictions and cognitive processing limitations. Plaintiff formally requested a centralized, written-only communication protocol via email to accommodate her severe medical restriction

55. Defendant flatly refused to engage in a meaningful interactive process, denied the requested modifications, and instead enforced mechanical, unexplained phone demands. Defendant further stripped away Plaintiff's primary, accessible written communication channel by executing a post-filing digital account portal lockout on May 6, 2026, thereby intentionally exacerbating Plaintiff's physical and cognitive fatigue.

**CLAIM III: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**
**(15 U.S.C. § 1692e & § 1692f(6)) — Against Defendant MCCARTHY & HOLTHUS, LLP**

56. Plaintiff incorporates all preceding factual paragraphs as though fully set forth herein.

57. Defendant McCarthy & Holthus, LLP acted as an independent "debt collector" utilizing the instruments of interstate commerce to execute a non-judicial foreclosure auction against Plaintiff's residence.

58. Under 15 U.S.C. § 1692f(6), debt collectors are strictly prohibited from taking or threatening to take non-judicial action to effect dispossession of property if there is no present right to possession. Because the underlying Notice of Default was recorded in direct violation of the California Homeowner Bill of Rights dual-tracking ban, no present right to possession exists.

59. Furthermore, under 15 U.S.C. § 1692e, debt collectors are prohibited from using any false, deceptive, or misleading representations in connection with the collection of a debt. On July 9, 2026, lead defense counsel Matthew Learned, acting as an agent for M&H, represented in writing that Plaintiff had an active, open modification track through March 2026. This statement directly contradicts Defendant's official Answer (alleging reviews concluded in January) and the servicer's July 20 letter (alleging a May 11 denial). Advancing an extrajudicial liquidation date based on un-reconciled, false, and mutually exclusive collection tracking data constitutes a per se deceptive practice under § 1692e.

**CLAIM IV: VIOLATION OF THE CALIFORNIA HOMEOWNER BILL OF RIGHTS (HBOR)**

**(Cal. Civ. Code § 2923.6) — Statutory Injunction Against Dual-Tracking — Against All Defendants**

60. Plaintiff incorporates all preceding factual paragraphs as though fully set forth herein

61. California Civil Code Section 2923.6 establishes a strict, substantive statutory ban on "dual-tracking," prohibiting a mortgage servicer, trustee, or banking agent from recording a Notice of Default, Notice of Sale, or conducting a non-judicial trustee's sale while a complete loan modification application is actively pending review.

62. Plaintiff submitted a complete application on December 22, 2025, which Defendants acknowledged was "under active review" on December 29,

2025. In direct violation of Section 2923.6, Defendants recorded a Notice of Default on December 26, 2025, and subsequently scheduled an extrajudicial auction date for August 6, 2026, while applications and administrative appeals remained live and unresolved.

63. Pursuant to California Civil Code Section 2924.12(a)(1), this Court possesses explicit substantive jurisdiction to issue a Temporary Restraining Order and Preliminary Injunction to halt the scheduled August 6, 2026 foreclosure sale until Defendants fully comply with and cure the statutory review processes.

64. Defendants' July 20, 2026 correspondence and the three-way timeline contradiction between Dkt. 82 (January denial), counsel's July 9 email (March Trial Plan), and the July 20 letter (May 11 denial) constitute conclusive written proof that Defendants engaged in unlawful dual-tracking under California Civil Code § 2923.6 by advancing foreclosure proceedings while loss mitigation and escalation reviews remained open.

**CLAIM V: VIOLATION OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

**(Cal. Gov. Code § 12955 & § 12940(h)) — Housing Retaliation and Failure to Engage in the Interactive Process — Against All Defendants**

65. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

66. The California Fair Employment and Housing Act (FEHA) makes it an independent unlawful housing practice to deny reasonable accommodations, fail to engage in a continuous interactive process, or subject a disabled homeowner to retaliatory harms or terms and conditions because they asserted civil rights protections.

67. Defendants had explicit actual notice of Plaintiff's severe clinical oncology vulnerabilities and cognitive processing limitations. Defendants completely

breached their statutory duties by refusing to provide written communication accommodations, and subsequently executed an un-remediated, post-filing digital lockout on May 6, 2026, purposefully cutting off an active online portal to isolate Plaintiff from her accounting records.

68. Defendants' abrupt revocation of Plaintiff's digital portal access on May 6, 2026—executed exactly five days prior to their alleged May 11, 2026 denial letter—was a targeted, retaliatory act designed to cut off an ADA-compliant written communication channel, isolate a disabled oncology patient from her accounting ledgers, and manufacture an artificial default.

**CLAIM VI: FINANCIAL ABUSE OF AN ELDER AND DEPENDENT ADULT**

**(Cal. Welf. & Inst. Code § 15610.30, et seq.) — Against All Defendants**

69. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

70. At all times relevant, Plaintiff's household contained a vulnerable caregiving and medical containment structure, specifically involving Plaintiff as a severely ill oncology patient navigating chronic processing fatigue, and her dependent mother requiring full-time 24/7 bedside safety monitoring. Defendants possessed explicit, actual notice of these dynamic elder and dependent adult medical vulnerabilities.

71. Pursuant to California Welfare & Institutions Code Section 15610.30, Defendants engaged in statutory financial abuse by taking, appropriating, obtaining, and retaining Plaintiff's real property title interests for a wrongful use, with the intent to defraud, and through the systematic application of undue influence

72. Defendants systematically utilized digital exclusion, un-remediated third-party data breaches, and unlawful dual-tracking to exploit an

immobilized medical caregiving household, seeking to force an extrajudicial asset liquidation on August 6, 2026, before Plaintiff could complete her parallel state civil rights appellate reviews.

**CLAIM VII: VIOLATION OF THE CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**

**(Cal. Civ. Code § 1788.17) — Against Defendants MCCARTHY & HOLTHUS, LLP and QUALITY LOAN SERVICE CORPORATION**

73. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

74. Pursuant to California Civil Code Section 1788.17, mortgage foreclosure trustees and debt collection firms are strictly bound by the operational compliance standards of the federal FDCPA (15 U.S.C. § 1692 et seq.) under California law, as articulated in *Best v. Ocwen Loan Servicing, LLC* (2021).

75. Defendants M&H and Quality engaged in independent tortious conduct outside the scope of ministerial trustee protections by managing and advancing an active auction sale date based on contradictory accounting timelines and back-dated notices. Advancing an extrajudicial liquidation using deceptive collection statements constitutes a per se violation of Section 1788.17.

**CLAIM VIII: VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200, et seq.) — Against All Defendants**

76. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

77. California Business and Professions Code Section 17200 prohibits any unlawful, unfair, or deceptive business act or practice.

78. Defendants' business practices—including generating conflicting denial dates across court filings and customer correspondence, mismailing private third-party borrower records into Plaintiff's caregiving domain, and abandoning formal escalation commitments under Case No. 2319539—constitute per se unlawful, unfair, and fraudulent business acts under California Business & Professions Code § 17200.

**CLAIM IX: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**(California Common Law) — Against Defendant MIDFIRST BANK**

79. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

80. Every contract in California contains an implied covenant of good faith and fair dealing, requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement.

81. Defendant MidFirst Bank intentionally frustrated Plaintiff's right to receive the fruits of her FHA-insured mortgage contract by misapplying loss-mitigation parameters, calculating un-itemized corporate fees, and pretending to review her loan modifications while simultaneously advancing extrajudicial liquidation tracks behind her back.

**CLAIM X: NEGLIGENCE & NEGLIGENT RETENTION OF COMMINGLED DATA**

**(California Common Law) — Against Defendant MIDFIRST BANK / MIDLAND MORTGAGE**

82. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

83. Defendants owe a commercial duty of care to their borrowers to maintain an accurate financial ledger, process modifications with care, and secure non-public personal identifiers.

84. Defendants breached this duty by completely mismanaging Plaintiff's account and repeatedly committing data leaks by transmitting the private account logs and medical hardship summaries of unrelated borrowers (Angel Perdomo and Barbara Butler) into Plaintiff's caregiving domain. This structural commingling establishes that Defendants' automated calculations regarding Plaintiff's account are fundamentally inaccurate and legally deficient.

## VII. PRAYER FOR RELIEF

85. Plaintiff respectfully requests that this Court enter judgment against Defendants as follows:

86. For an immediate **Temporary Restraining Order and Preliminary Injunction** pursuant to Cal. Civ. Code § 2924.12(a)(1) and FRCP 65 enjoining Defendants, their trustees, and agents from advancing any foreclosure steps or conducting the scheduled August 6, 2026 trustee's sale;

87. For a **Declaratory Judgment** validating that the Notice of Default was recorded in direct violation of state dual-tracking bans and is legally null and void;

88. For an Order compelling the **immediate restoration** of full, unrestricted, ADA-compliant online borrower portal access;

89. For an Order **approving the recording of Plaintiff's Notice of Pendency of Action (Lis Pendens)** pursuant to Cal. CCP § 405.20;

90. For general, compensatory, statutory, and treble damages under **FEHA and applicable California statutory frameworks** according to proof at trial;

91. For a complete waiver of any injunction cash bond requirement under FRCP 65(c) due to Plaintiff's established *In Forma Pauperis* status; and

92. For such other equitable or structural relief as this Court deems necessary.

**VIII. JURY DEMAND**

93. Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:** August 24, 2026

Respectfully submitted,

/s/ Ifeoma Chukwurah

**Ifeoma Chukwurah, R.N.**

*Plaintiff, Pro Se*