**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**IFEOMA CHUKWURAH R.N,**

Plaintiff,

v.

**MIDLAND MORTGAGE** (servicer name as used in communications), a division of MIDFIRST BANK; **MIDFIRST BANK;MIDLAND MORTGAGE INVESTORS TRUST; QUALITY LOAN SERVICE CORPORATION; MCCARTHY & HOLTHUS, LLP; and DOES 1–100,**

Defendants.

**Case No.:** 2:26-cv-01990-MWC-SK

**EXHIBIT 1: PROPOSED SECOND AMENDED COMPLAINT FOR EQUITABLE TITLE RESTITUTION, STATUTORY POST-SALE TREBLE DAMAGES, CIVIL RIGHTS RETALIATION, AND COMPENSATORY RELIEF**

*(RESPA, ECOA, FHA, FDCPA, ROSENTHAL ACT, HBOR § 2924.12(b), FEHA, EADACPA § 15610.30, BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT, UCL § 17200, NEGLIGENCE/CCPA, AND CIVIL CONSPIRACY)*

**DEMAND FOR JURY TRIAL**

Plaintiff IFEOMA CHUKWURAH, R.N., appearing *pro se*, alleges as follows:

## I. INTRODUCTION

1. This action arises from a continuous, bad-faith course of predatory mortgage servicing, statutory dual-tracking violations, retaliatory digital exclusion, and an unlawful non-judicial foreclosure auction executed on August 6,

2026, while Plaintiff's complete loan modification applications, administrative appeals, and federal litigation were actively pending.

2. Defendants subjected Plaintiff—a disabled Registered Nurse and oncology patient recovering from cancer surgery while providing 24/7 bedside care for her elderly mother suffering from advanced Alzheimer's disease—to arbitrary accounting loops, commingled third-party data breaches, an un-remedied digital portal lockout, and an extortionate demand to dismiss this federal civil rights action with prejudice as a condition of statutory loss mitigation review.

3. Upon Plaintiff's refusal to surrender her civil rights under duress, Defendants proceeded to conduct a bad-faith non-judicial foreclosure auction of Plaintiff's primary residence on August 6, 2026, in direct violation of the California Homeowner Bill of Rights (Cal. Civ. Code § 2923.6) and federal consumer protection statutes. Plaintiff brings this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and Local Rule 15-1 to quiet title, vacate and cancel the Trustee's Deed Upon Sale, and recover matured statutory, compensatory, and treble damages.

4. **Pro Se Preamble and Leniency Mandate:** Plaintiff brings this action in *pro per* and invokes her fundamental protections under *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) and *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Allegations within a self-represented litigant's complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers, and must be construed liberally to protect substantive constitutional and statutory rights.

## II. JURISDICTION AND VENUE

5. This Court possesses subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises directly under the Real Estate Settlement Procedures Act (RESPA, 12 U.S.C. § 2605), the Equal Credit Opportunity Act (ECOA, 15 U.S.C. § 1691), the federal Fair Housing Act (FHA, 42 U.S.C. §§ 3604, 3617), and the Fair Debt Collection Practices Act (FDCPA, 15 U.S.C. § 1692f(6)).

6. The Court exercises supplemental jurisdiction over all California state-law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the identical nucleus of operative facts concerning the servicing, default notices, assessment liens, and foreclosure of Plaintiff's residential security.

7. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because the real property asset at issue is located in Hawthorne, Los Angeles County, California, and the events, transactions, and unlawful acts giving rise to these claims occurred within this judicial district.

**III. PARTIES**

8. Plaintiff **IFEOMA CHUKWURAH, R.N.**, is an individual, a Registered Nurse (BS, BSN, MPA), a recovering post-carcinoma oncology patient, and the owner-occupant of the subject real property located at 13922 Lemoli Avenue, Hawthorne, California 90250 (APN: 4052-024-086).

9. Defendant **MIDLAND MORTGAGE** is an operational division of Defendant MidFirst Bank, operating as a commercial mortgage servicer responsible for customer billing, escrow administration, loss-mitigation processing, and the servicing conduct alleged herein.

10. Defendant **MIDFIRST BANK** is a federally chartered savings association that owns, directs, controls, and dictates the loss-mitigation policies, underwriting configurations, digital portal infrastructure, and executive foreclosure directives executed by Midland Mortgage.

11. Defendant **MIDLAND MORTGAGE INVESTORS TRUST** is a banking pool entity claiming a beneficial, securitized investment interest in Plaintiff's promissory note and Deed of Trust.

12. Defendant **QUALITY LOAN SERVICE CORPORATION ("Quality")** is a California foreclosure trustee entity acting as an agent and co-conspirator of MidFirst Bank, sued herein for independent, bad-faith statutory dual-tracking violations under California Civil Code § 2923.6 and debt collection violations under 15 U.S.C. § 1692f(6) and California Civil Code § 1788.17.

13. Defendant **MCCARTHY & HOLTHUS, LLP ("M&H")** is a debt-collection law firm and foreclosure trustee agent acting on behalf of MidFirst and Quality. M&H is sued as an independent debt collector under 15 U.S.C. § 1692f(6) under *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019), and California Civil Code § 1788.17, for enforcing a non-judicial foreclosure sale without a lawful present right to possession and attempting to coerce dismissal of federal civil rights claims under threat of auction.

14. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as **DOES 1 through 100**, inclusive, and will amend this complaint when their identities are ascertained.

## IV. STATEMENT OF OPERATIVE FACTS

### A. The Loan, Deed of Trust, and Mandatory HOA Escrow Obligations

15. On January 2, 2016, Plaintiff executed a Deed of Trust securing an FHA-insured promissory note for $436,939.00 (Instrument No. 20160021458) on her primary residence at 13922 Lemoli Avenue, Hawthorne, California. Beneficial interest was subsequently assigned to MidFirst Bank.

16. Section 3 of the recorded Deed of Trust explicitly designates "Community Association Dues, Fees, and Assessments, if any," as an express "Escrow Item" that the lender is authorized and obligated to collect and administer to protect title priority. Concurrently, Covenant C of the Planned Unit Development (PUD) Rider signed by Plaintiff mandates that if the borrower does not pay PUD dues and assessments when due, the lender may pay them, with disbursements becoming additional secured debt.

17. Despite express contractual terms and repeated formal borrower requests, Midland arbitrarily refused to collect and escrow Plaintiff's monthly Lemoli Homes HOA dues. This intentional failure allowed the HOA's collection trustee, S.B.S. Lien Services ("SBS"), to record an assessment lien in September 2019 (T.S. No. 2018-2168) and extract over $4,500.00 in un-itemized collection charges and fees (including a $2,100.00 "Payment

Plan Monitoring Fee") out of pocket from Plaintiff to secure a release in July 2024 (Instrument No. 20240467388).

18. Midland's persistent refusal to escrow PUD assessments directly caused an ongoing, compounding $5,700.00 assessment delinquency on Classic Property Management's ledger, exposing Plaintiff's title to third-party lien foreclosure under California Civil Code § 5675 and draining the liquid financial reserves needed to maintain regular note payments.

**B. The Subordinate HUD Partial Claim and Accounting Commingling**

19. On October 24, 2019, Plaintiff executed a formal Loan Modification Agreement and an associated $129,205.94 HUD Partial Claim (Instrument No. 20191144663). The Partial Claim is a zero-percent, subordinate junior mortgage held directly by the Secretary of Housing and Urban Development, which does not require monthly payments and does not mature until the senior note is paid in full, refinanced, or the property is sold.

20. In subsequent default notices and in the Notice of Trustee's Sale, Defendants accelerated Plaintiff's debt to $618,259.44. In doing so, Defendants unlawfully commingled, capitalized, and misallocated the subordinate $129,205.94 HUD balance into senior foreclosure acceleration figures, inflating the default amount and creating an insurmountable, false financial barrier to loan reinstatement.

**C. Active Caregiving Household, Oncological Impairment, and Accommodation Denials**

21. Plaintiff is a Registered Nurse recovering from robotic partial nephrectomy cancer surgery for renal cell carcinoma, navigating documented autonomic dysfunction, chronic fatigue, and cognitive processing impairments, qualifying her as a disabled individual and dependent adult under California Welfare & Institutions Code § 15610.23.

22. Plaintiff's household includes her 70-year-old mother, Esther Chukwurah, a retired LAUSD School Nurse Practitioner suffering from advanced

Alzheimer's disease (FAST Stage 6C) who requires continuous 24/7 unassisted bedside care to prevent falls and elopement.

23. Defendants possessed repeated, actual written notice of Plaintiff's medical restrictions and the household caregiving dependency. Plaintiff formally requested written-only communication via email and digital portal access as a mandatory reasonable accommodation under the Fair Housing Act. Defendants ignored the interactive process, insisted on high-stress telephonic interrogations, and refused to centralize communications through Plaintiff's designated litigation email address (plaintiffdocs2025@gmail.com).

**D. The Loss Mitigation Timeline and HBOR Dual-Tracking Violations**

24. On December 22, 2025, Plaintiff submitted a complete mortgage assistance loss-mitigation package to Midland. On December 29, 2025, Defendants acknowledged receipt in writing, confirming the application was under active review.

25. In direct violation of California Civil Code § 2923.6, Defendants recorded a Notice of Default on December 26, 2025 (Instrument No. 20250938820), initiating non-judicial foreclosure while a complete application was pending.

26. On January 13, 2026, Midland assigned formal administrative review under MAC Escalation Inquiry Case No. 2319539, with a resolution deadline of February 7, 2026, which Midland extended in writing on February 5, 2026, to February 20, 2026. Defendants completely abandoned the escalation track, blew past the February 20 cutoff without issuing an evaluation, and advanced the foreclosure track.

27. On March 12, 2026, Plaintiff served a formal RESPA Notice of Error (NOE) and Qualified Written Request (QWR) pursuant to 12 U.S.C. § 2605 and 12 C.F.R. § 1024.35 detailing accounting errors and the abandoned escalation. Defendants failed to conduct a reasonable investigation or provide substantive written responses within statutory timelines.

28. Defendants generated contradictory, mutually exclusive timelines regarding loan mitigation:

- **Sworn Answer (Dkt. 82, ¶¶ 20, 23, 39):** MidFirst and Midland formally answered under oath that loss mitigation reviews concluded between October 2025 and January 2026.
- **Defense Counsel Letter (July 9, 2026):** Lead counsel Matthew Learned represented that Plaintiff had an active, approved Trial Plan through March 2026.
- **Servicer Letter (July 20, 2026):** Midland asserted that loan assistance was denied on May 11, 2026.

**E. Retaliatory Digital Portal Lockout and Written CFPB Admission**

29. On May 6, 2026—following Plaintiff's protected activity of filing federal civil rights claims and servicing exhibits on CM/ECF—Midland completely disabled Plaintiff's access to its online web portal. The portal was Plaintiff's established written, ADA-accessible channel for monitoring escrow, reviewing monthly statements, and uploading documents.

30. In an official written response submitted to the Consumer Financial Protection Bureau (CFPB) on August 6, 2026, MidFirst Bank admitted: *"Website access is limited when there is active litigation."*

    This constitutes an uncontroverted party admission of direct credit and housing retaliation against a disabled borrower for exercising access to court.

**F. Third-Party Data Breaches and Account Commingling**

31. Defendants demonstrated systemic software failure by commingling borrower records:

- Prior to November 3, 2025, Midland mailed to Plaintiff the private financial and medical hardship files of borrower Angel Perdomo (Loan No. 58749007), issuing a formal written apology on November 3, 2025.
- On April 9, 2026, Midland mailed to Plaintiff the private statements and account call logs of borrower Barbara Butler (Loan No. 57257927).

- These recurring breaches establish gross negligence in account record-keeping and confirm the unreliability of Defendants' automated default calculations.

**G. The Coercive Dismissal Demand, August 6 Foreclosure Auction, and Title Cloud**

32. On August 5, 2026, while Plaintiff’s loss-mitigation applications and Motion for Leave to Amend (Dkt. 106) were pending, defense counsel Matthew Learned transmitted an email explicitly conditioning Plaintiff’s statutory loan modification evaluation rights upon her signing a stipulation dismissing her pending federal civil rights action with prejudice.

33. Upon Plaintiff’s refusal to surrender her civil rights under duress, Defendants directed Quality Loan Service Corporation to conduct the non-judicial trustee auction of Plaintiff’s residence on the morning of August 6, 2026, at the Doubletree Hotel in Norwalk, California.

34. Quality conducted the auction without a lawful present right to possession, clouding Plaintiff’s real property title, destroying her home equity, and forcing the emergency liquidation of her mother’s dedicated long-term care savings to resist displacement.

**V. CAUSES OF ACTION**

**COUNT 1: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)**
**(12 U.S.C. § 2605(e); 12 C.F.R. § 1024.35 & § 1024.41)**

*(Against Defendants MidFirst Bank and Midland Mortgage)*

35. Plaintiff realleges all preceding paragraphs.

36. Under 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35, Defendants had a mandatory statutory duty to conduct a reasonable investigation and provide written responses within 30 business days to Plaintiff’s March 12, 2026 Notice of Error

regarding escrow misallocations,commingled data, and the abandonment of MAC Escalation Case #2319539.

37. Defendants breached these duties by failing to investigate, failing to reconcile the $129,205.94 HUD Partial Claim accounting, and advancing foreclosure notices while complete applications were active under 12 C.F.R. § 1024.41.

38. As a direct result, Plaintiff suffered actual economic damages (certified mailing costs, title examination, copying expenses) and pattern-or-practice statutory damages under 12 U.S.C. § 2605(f).

**COUNT 2: RETALIATION & ADVERSE ACTION UNDER THE EQUAL CREDIT OPPORTUNITY ACT (ECOA)**
**(15 U.S.C. § 1691(a)(3), § 1691(d); 12 C.F.R. § 1002.9 [Regulation B])**

*(Against Defendants MidFirst Bank and Midland Mortgage)*

39. Plaintiff realleges all preceding paragraphs.

40. Under 15 U.S.C. § 1691(a)(3), it is unlawful for a creditor to discriminate against or take adverse action against an applicant because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

41. Defendants took unlawful adverse action by revoking Plaintiff's digital portal access on May 6, 2026, which MidFirst admitted to the CFPB in writing was executed specifically because of "active litigation".

42. Defendants further violated 15 U.S.C. § 1691(d) by failing to provide written statements of specific reasons for adverse actions within 30 days, entitling Plaintiff to actual and statutory punitive damages under 15 U.S.C. § 1691e(b).

**COUNT 3: VIOLATIONS OF THE FEDERAL FAIR HOUSING ACT (FHA)**
**(42 U.S.C. §§ 3604(f)(3)(B), 3617)**

*(Against All Defendants)*

43. Plaintiff realleges all preceding paragraphs.

44. Defendants violated 42 U.S.C. § 3604(f) by refusing reasonable modifications to policies—specifically refusing to communicate in writing via email and digital portal—necessary to afford a disabled oncology patient an equal opportunity to use and maintain her dwelling.

45. Defendants violated 42 U.S.C. § 3617 by coercing, intimidating, and retaliating against Plaintiff through the May 6 digital lockout and the August 5 extortionate demand conditioning loan modification on the dismissal of federal civil rights claims, followed by an immediate auction on August 6.

**COUNT 4: VIOLATIONS OF THE FDCPA AND CALIFORNIA ROSENTHAL ACT**
**(15 U.S.C. § 1692f(6); Cal. Civ. Code § 1788.17)**

*(Against Defendants Quality Loan Service Corporation and McCarthy & Holthus, LLP)*

46. Plaintiff realleges all preceding paragraphs.

47. Under *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019), entities enforcing security interests are "debt collectors" subject to 15 U.S.C. § 1692f(6), which strictly prohibits taking non-judicial action to dispossess property without a present right to possession.

48. Because the Notice of Default and Notice of Sale were recorded in direct violation of the California Homeowner Bill of Rights dual-tracking ban (Cal. Civ. Code § 2923.6), Defendants had no present right to possession when scheduling and executing the August 6, 2026 auction.

49. Under California Civil Code § 1788.17, these acts constitute independent violations of California’s Rosenthal Act, subjecting Quality and M&H to statutory damages, penalties, and fee-shifting.

**COUNT 5: CALIFORNIA HBOR DUAL-TRACKING POST-SALE DAMAGES**
**(Cal. Civ. Code §§ 2923.6, 2924.12(b))**

*(Against All Defendants)*

50. Plaintiff realleges all preceding paragraphs.

51. California Civil Code § 2923.6 strictly prohibits recording a notice of default, notice of sale, or conducting a trustee's sale while a complete first-lien loan modification application or administrative appeal is pending.

52. Defendants conducted a public auction on August 6, 2026, while complete applications, MAC Escalation #2319539, and formal written appeals remained unresolved.

53. Under California Civil Code § 2924.12(b), because the sale was executed following material, intentional, reckless, and willful statutory violations, Defendants are jointly and severally liable for actual economic damages (lost home equity exceeding $380,000.00), mandatory attorney's fees, and the statutory greater of treble actual damages or a $50,000.00 civil penalty.

54. These post-sale economic damages directly include the acute destabilization of Plaintiff's residential caregiving household, creating imminent housing insecurity that endangered the continuity of medical care for Plaintiff's 70-year-old dependent mother and forced out-of-pocket mitigation expenses.

**COUNT 6: CALIFORNIA FEHA HOUSING DISCRIMINATION & RETALIATION**
**(Cal. Gov. Code § 12955 et seq.)**

*(Against All Defendants)*

55. Plaintiff realleges all preceding paragraphs.

56. Defendants violated the California Fair Employment and Housing Act by subjecting Plaintiff to disparate housing terms, refusing reasonable written accommodations, breaking down the interactive process, and executing a retaliatory foreclosure sale while administrative appeals remained pending with the California Civil Rights Department (CRD Case No. 202602-33511910).

**COUNT 7: FINANCIAL ABUSE OF AN ELDER AND DEPENDENT ADULT**
**(Cal. Welf. & Inst. Code § 15610.30; Cal. Civ. Code § 3345)**

*(Against All Defendants)*

57. Plaintiff realleges all preceding paragraphs.

58. Plaintiff's household contains a dependent adult (Plaintiff, recovering from cancer surgery with severe autonomic dysfunction) and a protected elder (Esther Chukwurah, age 70, suffering from advanced Alzheimer's disease).

59. Defendants engaged in statutory financial abuse under Welfare & Institutions Code § 15610.30 by taking, encumbering, and clouding real property title interests through unlawful dual-tracking, and by forcing the emergency depletion of an elder co-resident's savings to resist improper dispossession.

60. Defendants' predatory dual-tracking and wrongful auction directly disrupted the continuity of care for an elder suffering from advanced Alzheimer's disease, proximately causing the emergency depletion of her dedicated caregiving and medical savings to fend off unlawful displacement.

61. Under California Civil Code § 3345, because Defendants' unfair and deceptive acts targeted an elder and disabled person, Plaintiff demands an award of discretionary treble civil penalties.

**COUNT 8: BREACH OF CONTRACT (EXPRESS DEED OF TRUST TERMS)**
**(California Common Law)**

*(Against Defendants MidFirst Bank and Midland Mortgage)*

62. Plaintiff realleges all preceding paragraphs.

63. The recorded Deed of Trust and PUD Rider constitute a valid, binding written contract. Section 3 of the Deed of Trust and Covenant C of the PUD Rider explicitly establish that Community Association Dues and Assessments are Escrow Items that the lender is authorized and contracted to administer to protect title.

64. Defendants breached these express covenants by arbitrarily refusing Plaintiff's formal requests to escrow monthly HOA dues, directly causing the $4,500.00+ SBS assessment lien fees and a compounding $5,700.00 HOA delinquency that encumbered Plaintiff's property.

65. Defendants further breached Section 14 (Notices) by directing critical servicing and default correspondence to fragmented personal email addresses rather than Plaintiff's designated litigation address of record.

**COUNT 9: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(California Common Law)**

*(Against Defendants MidFirst Bank and Midland Mortgage)*

66. Plaintiff realleges all preceding paragraphs.

67. Every California contract imposes an implied covenant of good faith and fair dealing prohibiting either party from acting arbitrarily to frustrate the other party's right to receive the fruits of the agreement.

68. Defendants breached this covenant by generating contradictory denial dates across court filings and customer letters, commingling third-party files, ghosting MAC Escalation #2319539, and pretending to evaluate loan modifications while advancing non-judicial foreclosure tracks.

**COUNT 10: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (UCL)**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**

*(Against All Defendants)*

69. Plaintiff realleges all preceding paragraphs.

70. Defendants engaged in unlawful, unfair, and fraudulent business practices in violation of Section 17200 by:

- (a) Executing dual-tracking foreclosure in violation of Cal. Civ. Code § 2923.6;
- (b) Violating federal debt collection and disclosure standards under 15 U.S.C. § 1692f(6) and ECOA;
- (c) Disabling customer portal access during litigation to impede document review; and
- (d) Commingling private borrower files in violation of data security duties.

71. Plaintiff suffered concrete injury in fact and lost money or property, including the $4,500.00+ SBS lien payout, out-of-pocket mitigation costs, and the loss of title and home equity.

**COUNT 11: COMMON LAW NEGLIGENCE & CCPA DATA BREACH**
**(Cal. Civ. Code §§ 1714, 1798.150)**

*(Against Defendants MidFirst Bank and Midland Mortgage)*

72. Plaintiff realleges all preceding paragraphs.

73. Defendants owed a duty of reasonable care under California Civil Code § 1714 to maintain accurate servicing records and safeguard non-public consumer financial information.

74. Defendants breached these duties by repeatedly transmitting the sensitive financial and medical records of unrelated borrowers (Perdomo and Butler) into Plaintiff's caregiving domain and commingling accounts, proximately causing administrative delay, severe emotional distress, and erroneous debt calculations.

75. Defendants' negligent servicing and foreclosure escalation directly threatened Plaintiff's ability to maintain a safe, continuous residential caregiving environment for her dependent elder mother, inflicting severe emotional distress and physical exacerbation of Plaintiff's oncological recovery.

**COUNT 12: CIVIL CONSPIRACY & AIDING AND ABETTING WRONGFUL FORECLOSURE**
**(California Common Law)**

*(Against All Defendants)*

76. Plaintiff realleges all preceding paragraphs.

77. Defendants MidFirst Bank, Midland Mortgage, Quality Loan Service Corporation, and McCarthy & Holthus, LLP formed a common agreement, plan, and civil conspiracy to execute an unlawful non-judicial foreclosure auction on August 6, 2026.

78. Each defendant committed overt acts in furtherance of the conspiracy: MidFirst directed the sale and demanded civil rights dismissals under duress; M&H managed deceptive communications and collection schedules; and Quality executed the sale without a present right to possession, rendering all defendants jointly and severally liable for all resulting damages.

79. Defendants acted in concert with reckless disregard of the foreseeable harm to an established medical household, leveraging the threat of immediate dispossession and the disruption of critical elder care to coerce Plaintiff's financial surrender.

**VI. PRAYER FOR RELIEF**

80. WHEREFORE, Plaintiff Ifeoma Chukwurah respectfully requests judgment against Defendants as follows:

81. **Equitable Title Restitution (Primary Remedy):**

- For an Order vacating, cancelling, and setting aside the August 6, 2026 non-judicial trustee auction and any resulting Trustee's Deed Upon Sale;
- For an Order quieting legal title to 13922 Lemoli Avenue, Hawthorne, California in Plaintiff's name;
- For an Order directing MidFirst to correct its accounting, properly credit and isolate the $129,205.94 HUD Partial Claim, and restore Plaintiff to an affordable, fixed-rate FHA loan modification.

82. **Statutory & Treble Damages (Alternative / Cumulative Remedy):**

- In the alternative, if title cannot be equitably restored, for actual economic damages for lost home equity exceeding $380,000.00, trebled pursuant to California Civil Code § 2924.12(b) to an amount exceeding $1,140,000.00;
- For statutory civil penalties of $50,000.00 under California Civil Code § 2924.12(b);
- For statutory penalties under FDCPA (15 U.S.C. § 1692k) and the Rosenthal Act (Cal. Civ. Code § 1788.30);
- For statutory pattern-or-practice damages under RESPA (12 U.S.C. § 2605(f));
- For statutory punitive damages under ECOA (15 U.S.C. § 1691e(b));
- For discretionary treble civil penalties pursuant to California Civil Code § 3345 for deceptive practices directed against an elder and dependent adult.

83. **Compensatory & Consequential Economic Relief:**

- For compensatory damages for the $4,500.00+ SBS lien release fees and direct payment or escrowing of the $5,700.00 HOA assessment balance;
- For general compensatory damages for emotional distress, physical distress, oncological exacerbation, and civil rights injury according to proof at trial;

- For restitution of all elder care savings depleted as a proximate result of Defendants' unlawful dual-tracking.

84. **Injunctive & Declaratory Relief:**

- For a Declaratory Judgment that Defendants had no present right to possession on August 6, 2026, and that the Notice of Default was void *ab initio*;
- For a Permanent Injunction commanding Defendants to restore full, unrestricted ADA-compliant online borrower portal access and enforce written communication protocols.

85. **Costs and Interest:**

- For mandatory statutory attorney's fees (upon retention of counsel) and litigation costs pursuant to Cal. Civ. Code § 2924.12(h), 12 U.S.C. § 2605(f)(3), 15 U.S.C. § 1692k(a)(3), and 42 U.S.C. § 3613(c)(2);
- For prejudgment interest at the statutory rate from August 6, 2026 pursuant to California Civil Code § 3287; and
- For such other and further relief as the Court deems just and proper.

**VII. JURY DEMAND**

86. Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:** September 18, 2026

Respectfully submitted,

/s/ Ifeoma Chukwurah

**Ifeoma Chukwurah, R.N., BS, BSN, MPA**

*Plaintiff Pro Se*